

**SO ORDERED.**

**SIGNED this 26th day of July, 2012.**

Dale L. Somers
United States Bankruptcy Judge

___

Designated for on-line use, but not for print publication

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>**BROOKE CORPORATION, et. al.,**<br><br>DEBTORS. | CASE NO. 08-22786<br>(jointly administered)<br>CHAPTER 7 |
| **CHRISTOPHER J. REDMOND,** Chapter 7 Trustee of Brooke Corporation, Brooke Capital Corporation, and Brooke Investments, Inc.,<br><br>PLAINTIFF,<br><br>v.<br><br>**CJD & ASSOCIATES a/k/a Davidson-Babcock,**<br><br>DEFENDANT. | ADV. NO. 11-06236 |

| | |
|---|---|
| CHRISTOPHER J. REDMOND, Chapter 7 Trustee of Brooke Corporation, Brooke Capital Corporation, and Brooke Investments, Inc., <br><br>    PLAINTIFF, <br><br>v. <br><br>DAVIDSON-BABCOCK, INC., a/k/a CJD & Associates, <br><br>    DEFENDANT. | ADV. NO. 11-6238 |

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants CJD & Associates (CJD) and Davidson-Babcock, Inc. (D-B) (collectively Defendants) move for summary judgment on the complaints of the Chapter 7 Trustee of the estates of Brooke Corporation, Inc., Brooke Capital Corporation, and Brooke Investments, Inc. (Trustee) to avoid allegedly preferential transfers and fraudulent conveyances to CJD of approximately 8.6 million dollars.[1]  The complaints against the two Defendants are identical, with the exception of the addition in the Amended Complaint against D-B of allegations that it is liable for the allegedly avoidable transfers

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984.  Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H).  There is no objection to venue or jurisdiction over the parties.

2

to CJD as the successor in interest to CJD. The facts and arguments in the motions, responses, and replies filed in the CDJ and the D-B adversary cases are identical.

Although discovery is far from complete, Defendants[2] move for summary judgment on three defenses - judicial estoppel, strict foreclosure, and waiver. The Trustee[3] opposes the motions based upon both the substantive law and because of the presence of material factual disputes.[4]

**UNCONTROVERTED FACTS.**

The following facts are uncontroverted for purposes of the motions for summary judgment:

Plaintiff is the Chapter 7 Trustee of Debtors Brooke Corporation, Brooke Capital Corporation, and Brooke Investments. Prior to October 28, 2008, when Debtors filed for relief under Chapter 11 of the Bankruptcy Code, CJD, a Kansas limited liability company, was a wholly-owned subsidiary of Brooke Brokerage Corporation (Brooke Brokerage), who in turn was a wholly-owned subsidiary of Brooke Corporation. CJD conducted an insurance brokerage business under the name Davidson-Babcock. In the adversary complaint against CJD, the Trustee alleges that prepetition numerous transfers were made

---

[2] CJD appears by Paul D. Sinclair and Brendan L. McPherson of Polsinelli Shughart PC.

[3] The Trustee appears by Benjamin F. Mann, John J. Cruciani, and Michael D. Fielding of Husch Blackwell LLP.

[4] Since the facts which are uncontroverted as sufficient for the Court to deny the motions, this opinion does not address issues relating to the Trustee's compliance with Federal Rule of Civil Procedure 56.

3

by Brooke Capital and Brooke Corporation to CJD, which can be avoided as preferential transfers or fraudulent conveyances and recovered from defendant CJD for the benefit of the estates. By virtue of the transactions described below which resulted in defendant D-B, an Iowa corporation, acquiring the assets of CJD in 2009, the Trustee contends in the complaint against D-B that it has liability as the successor in interest to CJD for avoided transfers made to CJD.[5]

On May 21, 2008, NCMIC Finance Corporation (NFC) loaned Brooke Corporation $2.5 million dollars. The loan was 100% guaranteed by Brooke Brokerage and secured by Brooke Brokerage's delivery to NFC of a certificate for 100% of the common stock of CJD. Brooke Corporation defaulted on the loan, and NFC became entitled to foreclose on the collateral.

The collateral was described as "stock," and a "stock" certificate was delivered to NFC. The parties agree that CJD was a Kansas limited liability company and that the collateral was Brooke Brokerage's 100% ownership interest in CJD, not stock. But the use of the term "stock" rather than membership interest in the loan documents and elsewhere is not relevant to the issues before the Court.

In October, 2008, Debtors filed a voluntary petition under Chapter 11. Albert Riederer was appointed Chapter 11 Trustee. On December 22, 2008, the Chapter 11

---

[5] At oral argument, counsel for Defendants asserted that CJD is dissolved and forfeited its charter on July 15, 2010.

4

Trustee filed an Emergency Motion[6] requesting that the Court permit him to abandon the stock of CJD to NFC as the holder of a security interest in the stock securing the loan, which was then in default. The Chapter 11 Trustee alleged that CJD was conducting business as an insurance broker, but, as a result of the bankruptcy filing of Brooke Corporation and two of its affiliates, CJD was unable to maintain its existing business and was rapidly losing valuable insurance company general agency contracts. The Chapter 11 Trustee further alleged that "unless immediate action is taken to consummate this abandonment, CJD's business will have no value to anyone" and that the "Debtor has no equity in the stock of CJD and the stock has no value and is of no benefit to the estate."[7] The Court granted the emergency motion.

On January 15, 2009, NFC and Brooke Brokerage enter into Agreement to Accept Collateral in Satisfaction of Obligations (Agreement). Collateral is defined in the Agreement as 100% of the common stock of CJD, a wholly owned subsidiary of Brooke Brokerage. The Agreement recites that "The Secured Creditor [NFC] has fully performed under the Note, and neither the Debtor [Brooke Brokerage] nor Brooke [Brooke Corp.] has any claim or cause of action against the Secured Creditor with respect to the Note or the Collateral."[8] NFC agreed to accept the Collateral in full satisfaction of the Brooke Brokerage's obligation to NFC, as provided in UCC 9-620(c)(2). The parties

---

[6] Case 8-22786, dkt. 326.

[7] *Id.*

[8] Dkt.12-3.

5

acknowledged and agreed, that under UCC 9-622, NFC's acceptance of the collateral (I) discharged the obligations of Brooke Brokerage under the guarantee, but did not waive or discharge NFC's claim against Brooke Corporation with respect to the note; (ii) transferred to NFC all of Brooke Brokerage's interest in the collateral; and (iii) discharged the security interest, which Brooke Brokerage and NFC acknowledged, to the best of their knowledge was the only lien or security interest in the collateral. NFC also agreed upon satisfaction of certain conditions, it would pay Brooke Corp. $50,000, which payment has been made. When moving for the order to allow abandonment of Brooke Brokerage's interest in CJD, agreeing to the strict foreclosure, and entering into the Agreement, the Chapter 11 Trustee did not disclose the possibility of preference or fraudulent conveyance claims against CJD.

After the 100% membership interest in CJD was acquired by NFC through the strict foreclosure, D-B, the Defendant Iowa corporation, was formed to acquire the assets of CJD. The Defendants allege that approximately 2.9 million dollars has been invested in D-B to resurrect the business of CJD, but the Trustee controverts this fact because discovery has not been undertaken.

On June 29, 2009, the Bankruptcy Court entered an order converting the Debtors' Bankruptcy proceedings to Chapter 7. Albert Riederer was appointed Chapter 7 Trustee. Plaintiff Redmond is the successor to Albert Riederer as Chapter 7 Trustee of the Debtors.

## ANALYSIS.

### A. JUDICIAL ESTOPPEL.

Judicial estoppel is Defendants' primary argument in support of summary judgment. Defendants urge that the Trustee should be estopped from pursuing the avoidance claims based upon the positions taken by the Chapter 11 Trustee in the Emergency Motion and the Agreement. Equitable arguments in favor of the Defendants abound. A case of unfairness as to the claim against B-D under these facts is readily apparent. The membership interest in CJD, which had no value to the Debtors' estates, was acquired by NFC; the possibility of claims against CJD was not disclosed; NFC transferred the assets of CJD to B-D; and B-D invested significant sums to revitalize the business of CJD. The Chapter 7 Trustee now seeks to recover 8.66 million dollars from B-D, and CJD, far more than CJD was worth when the membership interest was transferred in strict foreclosure. But application of judicial equitable estoppel does not rest upon fairness.

The Tenth Circuit Court of Appeals describes the doctrine of judicial estoppel as follows:

> The Supreme Court first recognized the doctrine of judicial estoppel in *New Hampshire v. Maine*. The Court explained that the doctrine's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749-50, 121 S.Ct. 1808 (internal citation and quotations omitted). In other words, "the rule is intended to prevent improper use of judicial machinery." *Id*. at 750, 121 S.Ct. 1808 (internal

7

quotations omitted). While the Court recognized the circumstances under which a court might invoke judicial estoppel will vary, three factors "typically inform the decision whether to apply the doctrine in a particular case." *Id*. First, a party's subsequent position must be "'clearly inconsistent'" with its former position. *Id*. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]" *Id*. (emphasis added) (internal quotations omitted). Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped. *Id*. at 751, 121 S.Ct. 1808.[9]

Hence, the essence of the doctrine is preclusion of a present position which is clearly inconsistent with the party's prior position which was judicially approved.

The Defendants' arguments in support of the contention that the Trustee has taken clearly inconsistent positions compares the allegations of the avoidance actions with the representations made in the Emergency Motion. Defendants state in their memoranda in support of summary judgment as follows:

> In the Emergency Motion, Riederer represented both that "[t]he Debtor has no equity in the stock of CJD and the stock has no value and is of no benefit to the estate" and that "[t]he emergency nature of this sale is that unless immediate action is taken to consummate this abandonment, CJD's business will have no value to anyone. The former trustee certainly did not disclose the fact that it has an $8.66 million avoidance claim against an alleged insider when it made its representations to this Court or to NFC. Succinctly stated, the former trustee took $50,000 in consideration for CJD for the

---

[9] *Eastman v. Union Pacific R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007).

8

> benefit of the estates, did not disclose that it would later sue CJD, and now has sued CJD for an amount in excess of $8 million.[10]

The Court rejects this argument. There is no inconsistency. In the Emergency Motion, the Chapter 11 Trustee stated that Debtor's interest in CJD had no value - it was a membership interest which was fully encumbered by a lien of approximately 2.5 million dollars. A representation in the Emergency Motion that the estates had no avoidance claims against CJD would create an inconsistency, but there is no such representation. The assertion of the avoidance actions against CJD, the entity, over two years after the filing of the Emergency Motion, is independent of the right to abandon the membership interest. And, assuming that at the time the Emergency Motion was filed, the Chapter 11 Trustee had knowledge of the avoidance claims against CJD, a very doubtful assumption, Defendants point to no legal obligation of the Chapter 11 Trustee to disclose such potential claim against CJD in the Emergency Motion.

The presence of clearly inconsistent positions taken before the court is the essence of judicial estoppel. Since Defendants fail to show clearly inconsistent positions, the Court does not address the additional elements of the defense and denies summary judgment under the doctrine of judicial estoppel based upon the absence of clearly inconsistent positions.

---

[10] Case no. 11-06236, dkt. 12 at 12.

9

## B. STRICT FORECLOSURE.

When contending that they are entitled to summary judgment, Defendants next argue that "[a]ny preference or fraudulent transfer claims were terminated as subordinate claims under the Uniform Commercial Code when NFC accepted its collateral, . . .."[11] Understanding of this defense requires examination of the Agreement and relevant sections of Article 9 of the Uniform Commercial Code (UCC).

As stated in the Agreement and in accord with § 9-620(c)(2) of the UCC, Brooke Brokerage agreed to NFC's acceptance of the collateral, Brooke Brokerage's 100% membership interest in CJD, in full satisfaction of Brooke Brokerage's obligation as guarantor of the note of Brooke Corporation owed to NFC. Section 9-622 addresses the effect of acceptance of collateral as follows:

> (A) Effect of acceptance. A secured party's acceptance of collateral in full or partial satisfaction of the obligation it secures:
> (1) Discharges the obligation to the extent consented to by the debtor;
> (2) transfers to the secured party all of a debtor's rights in the collateral;
> (3) discharges the security interest or agricultural lien that is the subject of the debtor's consent and any subordinate security interest or other subordinate lien; and
> (4) terminates any other subordinate interest.

This section of the UCC is reflected in the Agreement which provides that the acceptance of the Collateral in full satisfaction had the effect of: (1) discharging the secured

---

[11] *Id*. at 15.

guarantee obligation of Brooke Brokerage; (2) transferring to NFC all of Brooke Brokerage's interest in the collateral; and (3) discharging the security interest granted by Brooke Brokerage, which to the best of the knowledge of NFC and Brooke Brokerage was the only lien or security interest in the membership interest collateral.

According to Defendants, even though not mentioned in the Agreement, the Trustee's avoidance claims against CJD are "subordinate interests" which were terminated as a matter of law by the acceptance of the collateral under 9-622(a)(4). But this is not a correct interpretation of the UCC. The discharge of security interests under § 9-622(a)(3) and the termination of subordinate interests under § 9-622(a)(4) refer to interests in the collateral.[12] These subsections must be read in conjunction with § 9-621, which requires the secured party proposing to accept collateral in full satisfaction of a debt to give notice of the proposed strict foreclosure to parties claiming an interest in the collateral and holders of liens in the collateral. If none of these parties object to the proposal, upon completion of the acceptance of the collateral, their interests are discharged under § 9-622(a)(3). Even if the secured party did not give such notice to the holder of an interest, that subordinate interest is terminated under § 9-622(a)(4), but the secured party may have liability under § 9-625.[13] There is nothing in § 9-621, § 9-625,

---

[12] Official Comment to 9-622 ¶ 2 ("Paragraphs (2) through (4) indicate the effects of an acceptance on various property rights and interests."); 9C Frederick H. Miller & Neil B. Cohen, *Hawkland Uniform Commercial Code Series* § 9-622:2 [Rev] (Frederick H. Miller updated through June 2012, available at http://www.Westlaw.com) ("Section 9-622(b)[Rev] provides that a subordinate interest in the collateral is discharged even if the secured party does not comply with Article 9.")

[13] Official Comment to § 9-622, ¶ 2.

and § 9-625 addressing the release of claims against anything other than the collateral.

An avoidance claim against the entity, the interest in which was collateral for the loan, is not a subordinate interest in the collateral for purposes of § 9-622(a)(4). Strict foreclosure did not terminate the Trustee's claims.

**C. WAIVER.**

Defendants' third argument in favor of summary judgment is waiver. It is based upon the recital in the Agreement which states, "The Secured Creditor [NFC] has fully performed under the Note, and neither the Debtor [Brooke Brokerage Corporation] nor Brooke [Corporation] has any claim or cause of action against the Secured Creditor with respect to the Note or the Collateral." Collateral is defined to mean "100% of the common stock of CJD & Associates, LLC." According to Defendants, the acknowledgment of the absence of claims against NFC with respect to the membership interest in CJD is equivalent to the acknowledgment of the absence of claims against the CJD, the entity, whose membership interest was acquired by NFC.

This is an erroneous position. First, the recital relates to claims against NFC, to whom the membership interest was surrendered, not against the two Defendants in these adversary cases, CJD and B-D, the alleged successor to CJD. Second, under Kansas law, a membership interest is distinct from the limited liability company. A membership interest in a limited liability company is personal property.[14] And the debts, obligations,

---

[14] K.S.A. 17-76,111.

12

and liabilities of the limited liability company are solely the obligations of the limited liability company, not the personal obligation of the member of the company by virtue of the holding of the membership interest.[15] "[I]t is legally wrong to conclude that a member holding a majority ownership interest in a limited liability company owns the company property."[16] Therefore the absence of claims against a membership interest is unrelated to the presence or absence of claims against the limited-liability company itself.

Defendants' conflation of the 100% membership interest in CJD with CJD, the entity, permeates each of the defenses on which the summary judgment motions rely. According to Defendants, "100% of the ownership of CJD, an LLC with a sole member means CJD."[17] The only case cited in support is *Albright*.[18] It held where a debtor, on the date her Chapter 7 petition was filed, was the only member of a Colorado limited liability company, debtor's bankruptcy filing effectively assigned her entire membership interest in the limited liability company to Chapter 7 estate, and the Chapter 7 Trustee obtained all of her rights, including right to control management of the LLC. In this case the issue is not control of the limited liability company; it is assertion of claims against the limited liability company. In neither the Agreement nor the Emergency Motion did the Chapter 11 Trustee waive any claims against CJD.

---

[15] K.S.A. 17-7688.

[16] *In re Tax Exemption of Kouri Place, L.L.C.*, 44 Kan. App.2d 467, 470, 239 P.3d 96, (2010).

[17] Case no.11-06236, dkt. 14 at 18.

[18] *In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003).

13

**CONCLUSION.**

For the foregoing reason, Defendants' motions for summary judgment are denied. Defendants have not established the defenses of judicial estoppel, termination of claims through strict foreclosure, or waiver on which their motions are premised.

**IT IS SO ORDERED.**

###